## THOMAS COURTIS *vs.* BOWMAN W. DENNIS.

A. and B., partners, entered into articles of partnership with C , and therein agreed to furnish goods to him to be sold; and C. therein agreed that he would, during the continuance of the partnership, devote his attention to the sale of the goods which they should furnish, and not engage in any other business, nor purchase any goods for the partnership business, without their written consent : It was also agreed in said articles, that A. and B. should bear one half, and C. the other half, of the expenses incident to the prosecution of the partnership business, and also one half of the losses which might be sustained without the fault of either of them ; but that any loss, happening by the neglect or misconduct of either party, should be borne by the party causing it; and that one half of the profits of the partnership business should belong to A. and B., and the other half to C

On the day of the date of said articles of partnership, D. gave to A. and B. the following guaranty : " I guaranty to A. and B. the payment of one half of any loss that may accrue to them in the business of my brother C., during such time as he may be connected in business with said A. and B."

A and B. afterwards sold goods to C., and C. remitted money to them, from time to time ; but at the time of the dissolution of said partnership between A. and B and C., A., as surviving partner of the firm of A. and B., alleged that a balance was due from C. to said firm for the goods sold to him, as aforesaid ; and, without giving any notice to D., or making any demand on him, commenced an action against him, on his guaranty, to recover said balance.

*Held,* that D. was not liable for a loss on a sale of goods by A. and B. to C., but only for a loss in the partnership business of A., B. and C.; and that he was not liable to an action for such loss, unless notice had been given to him, within a reasonable time after the adjustment of the concerns of the partnership, of the amount claimed of him in consequence of losses in the partnership business.

Courtis v. Dennis.

THIS was an action of assumpsit, brought by the surviving partner of the firm of Courtis & Morse, upon the following guaranty: " Boston, August 23d 1838. Know all men by these presents, that I, Bowman W. Dennis, of Cambridgeport, in consideration of the sum of one dollar to me paid by Courtis & Morse of Boston, the receipt whereof I do hereby acknowledge, I do therefore guaranty to them the payment of one half of any loss that may accrue in the business of my brother, Selah G. Dennis, during such time as he may be connected in business with said Courtis & Morse.			Bowman W. Dennis."

Trial before *Wilde*, J., whose report thereof was as follows: Evidence was offered tending to show that a partnership was formed, on the 23d of August 1838, between Thomas Courtis and William S. S. Morse, then merchants and partners, in Boston, on the one part, and Selah G. Dennis, on the other part, by an agreement, which is stated in the margin; * that in

---

* Articles of agreement for a copartnership made and concluded this 23d day of August 1838, by and between Thomas Courtis and William S. S. Morse, both of Boston, merchants and copartners, doing business under the firm of Courtis & Morse, of the first part, and Selah G. Dennis of Cambridgeport, trader, of the second part.

Whereas the said parties have opened a store in Bangor, for the purpose of selling dry goods, and have mutually agreed that the business in said store shall be conducted by the said Dennis on account of himself and the parties of the first part, jointly, and in order to ascertain their respective rights, duties, privileges, and liabilities to each other, as well as to prevent disputes, they do hereby agree to the provisions of this indenture, and bind themselves, each party to the other, to the performance of the several stipulations herein contained.

And the said parties of the first part, in consideration of the covenants hereinafter reserved on the part of said Dennis, agree that they will furnish to him, when requested so to do, and on demand, goods of the kinds and quali ties which are usually kept for sale in a dry goods store ; and the party of the first part agree that said Dennis may return to them, within four weeks, such goods furnished by them as he shall find unsaleable, provided said Dennis shall not have cut said goods, or sold any part of 'that which he proposes to return.

And the said Dennis, in consideration of the covenants of the parties of the first part, doth hereby covenant with the parties of the first part, that he will, to the best of his skill, judgment and discretion, at all times during the continuance of this copartnership, attend to and transact the business of selling the goods which shall be furnished by the parties of the first part in manner aforesaid; that he will constantly keep the books of accounts, in

pursuance thereof, said Courtis & Morse sold and delivered to said Selah G. Dennis goods amounting to $7936·71; that the partnership between Courtis & Morse was dissolved on the 6th of November 1838, after which said Courtis continued in business in Boston, by himself, and, between said 6th of November and the 19th of August 1840, sold and delivered to said Selah G. Dennis other goods, amounting to $15,737·19; that said Cour-

which shall be duly registered all the business transactions of the said copartnership; that he will not, during the continuance of this copartnership, be concerned or engaged in any other pursuit, occupation or business, and that he will give his whole time and attention to the business of this copartnership, and use his best endeavors to render the same profitable; that he will not withdraw from the copartnership funds, for his personal use, more than is really necessary; that he will not purchase any goods for the business of the said copartnership, without the consent of the parties of the first part being thereto first obtained in writing, but the same shall be furnished by the parties of the first part in the manner aforesaid; that he will render to the parties of the first part, once in every three months, and at any other time on request, a regular account of the business transactions of the said copartnership, and exhibit the books of account of the said copartnership, for inspection, at any time when requested so to do; and that if any dispute should at any time occur, the parties of the first part shall have the exclusive right to possess themselves of the whole partnership stock, books, and all papers belonging to the concern, they engaging to account with said Dennis, and pay over to him his share of the net profits of the said partnership business, after paying themselves the first cost of the goods, all sums due from said Dennis to them, and all charges and expenses attending the sale of the goods and closing up the business of the concern; that the said Dennis will take an account of the stock, and of the debts due to and from the said partnership, once in every six months, and furnish the parties of the first part with an account of the result of the same; and that he will not lend any money of the partnership funds.

And the parties of the first and second part do hereby agree, each with the other, that each of said parties will bear one half of the expenses incurred for store rent, clerk hire, and all other necessary charges incidental to the prosecution of the business of said partnership, and one half of the losses which may be sustained without the fault of either of them; but if any loss should happen by the neglect or misconduct of either party, the loss so incurred shall be borne by the party causing the same; and that the profits of the partnership business shall be equally divided between them; that this copartnership shall continue in force for and during the term of two years from the 23d of August 1838, but that the misappropriation of the partnership funds, or the breach of any of the covenants or stipulations herein contained, shall constitute a legal ground for dissolving this copartnership at any time, by either of the parties hereto; and at the expiration of this agreement by its own limitation, or in case of a dissolution of the copartnership by mutual consent, the

tis afterwards formed a partnership with William Courtis, under the firm of William Courtis & Co., which last firm sold and delivered goods to said Dennis, amounting to $3802·97 ; that said Dennis remitted money to Courtis & Morse, amounting to $3426·75, so that the balance of the account of Courtis & Morse against said Dennis, at the time of said dissolution, was $4503·96 ; that said Dennis, after the said 6th of November 1838, continued to remit money to Thomas Courtis, the plaintiff, and, from that day to the 29th of September 1840, remitted $16,983·26, which sum the plaintiff claims the right to appropriate to the liquidation of said Selah G. Dennis's debts to the plaintiff, and to William Courtis & Co ; but the defendant claims the right to have the same applied to liquidate the debt which the plaintiff alleges to be covered by the defendant's guaranty.

The evidence proposed to be offered by the parties, to show the manner of making these remittances, was not gone into, the same not being deemed material to the question upon which the presiding judge suggested that the case should be carried up for 'the opinion of the full court.

The plaintiff offered no evidence of any partnership loss, as such, in the partnership business of Courtis & Morse and S. G. Dennis, nor of any notice to, or demand upon, the guarantor ; but the plaintiff claimed to recover, as surviving partner of Courtis & Morse, one half of the debt due from S. G. Dennis to Courtis & Morse, for goods sold as aforesaid.

The presiding judge ruled, 1st, that the action could not be sustained, unless the plaintiff should prove a loss in the partnership of Courtis & Morse and S. G. Dennis ; and that a claim of

stock and accounts due to the partnership shall be equally divided between the parties, and the balance, which may be found due to either party from the other, paid or secured, to the satisfaction of the party to whom the same may be found due.

In testimony whereof, the said parties have hereto set their hands and seals, the day and year above written.

Selah G. Dennis (Seal.)<br>
Thomas Courtis (Seal.)<br>
Wm. S. S. Morse (Seal.)

Courtis & Morse against S. G. Dennis, for goods sold, would not be such a loss as could be recovered against the guarantor; and 2d, that the plaintiff must also prove a notice to the guarantor, and demand of him, within a reasonable time, of the amount claimed; and that bringing the action was not a sufficient demand and notice to enable the plaintiff to recover.

To these rulings the plaintiff excepted; and it was agreed that if the first ruling should be sustained by the full court, the plaintiff should be entitled to a new trial, in order to let in proof of a partnership loss as aforesaid; that if the ruling as to demand and notice should be sustained, the plaintiff should become nonsuit; and that if neither of the rulings should be sustained, a new trial should be granted, to enable the defendant to offer evidence upon any point of his defence.

*G. T. Curtis & Story*, for the plaintiff. The true construction of the guaranty is, that Courtis & Morse should not be losers by becoming creditors of S. G. Dennis. By construing it so as to cover only a partnership loss, the defendant must be held to have engaged to indemnify S. G. Dennis against his own loss, as the partnership loss would be his, as well as that of Courtis & Morse. But such an absurdity is not to be supposed. In order to confine the guaranty to the partnership losses, the articles of partnership should have been recited or referred to in the contract of guaranty.

If the construction of the guaranty is doubtful, it is to be taken most strongly against the defendant. *Mason* v. *Pritchard*, 12 East, 227. *Barclay* v. *Lucas*, 1 T. R. 291, *note*.

It was not necessary that the plaintiff should show notice of the loss to the defendant, in order to recover. If the defendant did not receive notice, and suffered thereby, it was for him to show it in defence, and reduce the amount of his liability *pro tanto*. Notice is not a condition precedent, and the presumption is, that no injury is sustained by want of notice. Theobald on Prin. & Surety, § 176. *Capel* v. *Butler*, 2 Sim. & Stu. 457. *Wildes* v. *Savage*, 1 Story R. 22. *Orme* v. *Young*, Holt N. P. 84 *Goring* v. *Edmonds*, 6 Bing. 94. *Reynolds* v. *Douglass*, 2 Pet. 497. 3 Kent Com (3d ed.) 123.

*Whiting,* for the defendant.   A guarantor, who has no interest in the transaction, is not to be held to pay the debt of another, by words of doubtful import.   *Russell* v. *Clark,* 7 Cranch, 90.   A guaranty of another's debt is to receive a fair and reasonable interpretation, according to the true import of the terms, and the intention of the parties.   *Douglass* v. *Reynolds,* 7 Pet. 122.   *Bent* v. *Hartshorn,* 1 Met. 25.   The instrument now in question, when thus interpreted, guarantied partnership losses only.   By the articles of partnership, Courtis & Morse were to bear half those losses, and S. G. Dennis the other half.   It was Courtis & Morse's half, which the guaranty covered, and nothing more.   They were to *furnish* goods to S. G. Dennis, and he was to sell them, and not *purchase* any goods without their written consent.   A sale of goods by them to him was not contemplated by the articles of partnership, nor by the guaranty, which was of even date with those articles.

Notice of the amount for which a guarantor is held liable, should be given in a reasonable time after the dealings between the debtor and creditor are closed, and the amount ascertained, and before an action is brought; and the guarantor is also entitled to notice of demand on the debtor, and of non-payment by him.   Such are the general rules.   There are exceptions, however.   Demand on the debtor is not required when he is insolvent.   Notice to the guarantor is not necessary when he knows all the facts, nor when the guaranty is unqualified, and absolute at all events.   7 Pet. 126.   *Philips* v. *Astling,* 2 Taunt. 211.   *Gibbs* v. *Cannon,* 9 S. & R. 201.   *Cremer* v. *Higginson,* 1 Mason, 324.   *Edmondston* v. *Drake,* 5 Pet. 624.   *Holborow* v. *Wilkins,* 2 Dowl. & Ryl. 59, and 1 Barn. & Cres. 10.   *Wildes* v. *Savage,* 1 Story R. 32.   *Talbot* v. *Gay,* 18 Pick. 536.   *Babcock* v. *Bryant,* 12 Pick. 134.   *Dole* v. *Young,* 24 Pick. 252.   *Mussey* v. *Rayner,* 22 Pick. 223.   *Norton* v. *Eastman,* 4 Greenl. 526.   *Lewis* v. *Brewster, Foote* v. *Brown,* and *Hank* v. *Crittenden,* 2 McLean, 26, 371, 557.

HUBBARD, J.   In deciding the questions which have been argued in this case, it is unnecessary to consider whether the agreement between Courtis & Morse, of the one part, and S

G. Dennis of the other, constituted them copartners; or whether S. G. Dennis was only an agent to transact the business for Courtis & Morse, and was to be paid for his services by a share of the profits, instead of receiving a stipulated salary. Which-ever meaning is the true one, the guaranty is to receive the same construction, and having been made simultaneously with the agreement, it is to be considered in connexion with it.

It is admitted that there is a balance due from Dennis; but it is denied, by the defendant, that it arises from losses which have been sustained in the business. And the question is, whether the guaranty extends to any balance that may be due from S. G. Dennis to Courtis & Morse, or to Courtis the survivor of them, at the close of the business, without reference to the manner in which such balance arises; or whether it is to be confined to losses accruing in the regular course of their transactions.

It has been argued, that if there is any doubt as to the con-struction of the guaranty, it is to be taken most strongly against the guarantor, as was held in the case of *Mason* v. *Pritchard,* 12 East, 227, according to the legal maxim that a man's grant shall be construed most strongly against himself. *Quælibet con-cessio fortissime contra donatorem interpretanda est.*

As to deeds conveying lands and other interests in real estate, the rule probably originated in the presumption that a party making a grant knows what estate he owns, and what he has a right to convey; and consequently the use of ambiguous words, and of doubtful expressions, shall rather be explained against him than in his favor. If it were otherwise, vendors of real estate might be induced to use words of description susceptible of dif-ferent meanings, in the expectation of putting a construction up-on them most favorable to their own interests. And to prevent such consequences, this rule has been applied from time to time to other instruments. But in letters of guaranty, which are commercial instruments executory in their character, and where the liability of the makers depends upon the acts or misconduct of third persons, the better opinion, we think, is, that in their construction the language used shall be taken according to its ordinary acceptation and common meaning, without any special

leaning against the maker of the instrument ; and with this substantially agrees the opinion of the court, in the case of *Bell* v. *Bruen,* 1 Howard, 186, and in that of *Mussey* v. *Rayner,* 22 Pick. 228.   In charging a guarantor, his liability is not to be extended by implication, but it must be brought within the strict terms of the guaranty.   *Glyn* v. *Hertel,* 8 Taunt. 224.   *Har greave* v. *Smee,* 6 Bing. 248.  *Bacon* v. *Chesney,* 1 Stark. R. 195. *Dobbin* v. *Bradley,* 17 Wend. 424.

It has been argued for the plaintiff, that it is absurd to say that a balance due to the partnership was intended to be secured by the guaranty ;  the instrument having been given to two partners to guard them against a loss by the third partner ; and therefore, it is further urged, if there is a balance due from the third partner to the other two, on the close of their concerns, the guarantor is liable for such balance, whether arising from loss in the business, or from his own misconduct.

This guaranty was not indeed given to secure a debt due from a third person to the copartnership, but to secure two of the parties, Courtis & Morse, against half the loss which might be incurred in the business during its continuance, to be ascertained on its termination.   The simple inquiry therefore is, what was the nature of the loss intended to be made up by the defendant, by his instrument of guaranty.   The clause in the agreement is this :  " I do therefore guaranty to them " (Courtis & Morse,) " the payment of one half of any loss that may accrue in the business of my brother, S. G. Dennis, during such time as he may be connected in business with said Courtis & Morse." If it had been intended to secure any balance of account which might be due from S. G. Dennis, on the winding up of the concern, why was it not so expressed, in simple terms, " I guaranty to them the amount, or the one half of any amount, which may be due from S. G. Dennis to said Courtis & Morse on the close of the business ? "   But instead of this, the language is, to guaranty the payment of half the loss that may accrue in the business. Now it might well happen that there should be no loss in the business, and yet there might be a large balance of account due from S. G. Dennis ; the business might be profitable, and he spend

44

the profits and the capital.   Or he might refuse to pay over what was justly due from him.   It would rather seem that the plaintiffs, Courtis and his deceased partner Morse, had confidence in the integrity and business talents of Dennis;  but that they feared, as the times were hazardous, the goods might be sold on credit, and the proceeds not be collected, and so a loss might be incurred ; yet, on being made secure against half the loss arising from this cause, or from causes of a like character, they were willing to embark in the enterprise.   And the defendant, wishing to assist his brother, in putting him into business, was willing to guaranty against half the loss which might be incurred in carrying on the business, to be ascertained at its close.   And the last clause in the agreement between Courtis & Morse and S. G. Dennis strengthens and confirms this view of the intention of the parties.   By this it appears, that losses in the business were to be equally borne ; but a loss happening through neglect or misconduct was to be wholly borne by the party guilty of it.   And it cannot be reasonably contended that a loss in the business, ac cruing by the misconduct of either Courtis or Morse, and which was stipulated should be borne by the one thus causing it, should be made good, as to one half of it, by the defendant, as a loss accruing in the business.   We are therefore of opinion, that, by the terms of the letter of guaranty, taken in connexion with the agreement, there is secured to the plaintiff only the half of any loss that might accrue in the business by misfortunes ; such as bad debts, loss of goods, &c. ; and that the guarantor is not responsible for losses occasioned merely by the misconduct of S. G. Dennis.

On the question of notice, which was raised at the trial, many authorities have been cited, which cannot all be reconciled, nor are they all susceptible of distinct classification.   The terms sureties and guarantors are often confounded, from the fact that a guarantor is, in common acceptation, a surety for another.   The rules, however, of the common law as to sureties, are not strictly applied to guarantors, but rather the rules of the law merchant ; and the true distinction seems to be this :   That a surety is in the first instance answerable for the debt for which he makes himself responsible ;  and his contracts are often specialties :

while a guarantor is only liable where default is made by the party whose undertaking is guarantied ; and his agreement is one of simple contract.  A surety is not, as a matter of course, entitled to notice, and is not discharged by the insolvency of the principal debtor, for want of notice, although the principal was solvent when the debt became due.  But in regard to a guarantor, if the debt is not paid at maturity by the principal, who is solvent at the time, the guarantor will be discharged, if he has not received notice, if the principal shall have become insolvent. And, as a general rule, the guarantor is entitled to notice within a reasonable time ; and he will also be discharged, in whole or in part, where he can show a direct injury resulting from want of notice.  And we are of opinion, in this case, the guaranty being for a sum uncertain, the time of its limitation not fixed, and the amount of liability to be ascertained only by a settlement of accounts, and the winding up of the affairs of the copartnership, over which accounts and settlements the guarantor had no control, that he was entitled to notice of the amount claimed of him in consequence of losses in the business, before he was liable to an action, and that within a reasonable time after the adjustment of the concerns of the company.

On the agreement of the parties, the plaintiff is entitled to a new trial, in order to let in the proof, if such exists, of a loss resulting from the misfortunes of the business, and of his having given notice to the defendant of such loss.

Another question may also arise in the case, respecting the appropriation of the payments made by Dennis; and it will therefore be important to ascertain, on the next trial, whether there was any rest in the business, at the death of Morse, on account of stock taken and outstanding debts ascertained ; or whether the business went on, after his death, in the same manner as it did before, by Courtis's furnishing goods to Dennis, and his selling them, and making remittances from his collections, as well growing out of sales made before the death of Morse as afterwards, or from goods on hand at his death, and from those received afterwards, without making any distinction as, in the latter case, we should think the settled cases may lean

strongly to the conclusion that the guarantor is discharged. But the facts not being stated in detail, as to this part of the case and the point not having been argued, we do not mean to express any fixed opinion in relation to it, but only to call the attention of the parties to the bearing the evidence may have on the point, at the further trial of the cause.

Under this construction of the instrument, and the ruling in regard to notice, the trial of the case is to proceed